UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

THE BOARD OF TRUSTEES OF SHEET )
METAL WORKERS LOCAL 91 HEALTH & )
WELFARE PLAN by ERIC MEIRHAEGHE, )
CHAIRMAN OF THE BOARD )   No. 4:25-cv-04100-SLD-RLH
)
     Plaintiff, )
)
Vs. )
)
INTEGRATED ENVIRONMENTS TESTING )
& BALANCING, LLC )
)
     Defendant. )

**COMPLAINT**

COMES NOW the Plaintiff, the Board of Trustees of Sheet Metal Workers Local 91 Health & Welfare Plan (the "Plan"), by Eric Meirhaeghe, Chairman of the Board, by their attorneys, and for their cause of action against the Defendant, Integrated Environments Testing & Balancing, LLC ("Integrated Environments"), alleges as follows:

1. This action arises under the laws of the United States and is brought pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 USC §§1132, 1145 (hereinafter referred to as "ERISA"). Jurisdiction is based upon the existence of questions arising thereunder, as hereinafter more fully appears.

2. Plaintiff, Board of Trustees of Sheet Metal Workers Local 91 Health & Welfare Plan ("the Plan"), is a multiemployer health plan with its principal place

of business at 8124 42nd Street West, Rock Island, Illinois, and brings this action

on its own behalf and as collection agent of the Sheet Metal Workers' Local 91

Annuity Trust ("the Annuity") and the Illowa – Sheet Metal Workers Local 91

Joint Apprenticeship and Training Committee, Inc. ("the JATC"). The Annuity

and the JATC are hereinafter referred to collectively with the Plan as "the Funds".

3.  Defendant, Integrated Environments, is an Illinois limited liability

company with its principal place of business in Milan, Illinois, and is an employer

engaged in sheet metal industry within the geographic jurisdiction of this Court.

4.  Venue is proper in this Court under Section 502(e)(2) of ERISA (29

U.S.C. 1132(e)(2)), because the Defendant is located in this federal district and

the breaches giving rise to this action took place in this federal district.

5.  Integrated Environments is a party to a Collective Bargaining

Agreement, attached to this Complaint as Exhibit A (the "CBA"), with the Sheet

Metal Workers Local 91 Union ("the Union"), by Integrated Environments having

executed a written agreement dated July 26, 2021, and attached hereto as Exhibit

B, to be bound to the terms of the CBA.

6.  By adoption of the CBA, Integrated Environments agreed to make

certain and timely fringe benefit payments, including to the Plan, the Annuity,

and the JATC, and further adopts the trust agreements and amendments thereof

which establish and govern the Funds.

7.  Specifically, as an employer obligated to adhere to the CBA, Integrated

Environments must comply with the following provision of the CBA:

"Failure of the employer to remit promptly the payroll reporting or contribution

payments on or before the 15th day of the following month shall be in violation of

this agreement. The employer shall be liable to the Union and/or Funds for any costs related to the collection of any delinquent reports or monies due including attorney's fees, as set forth below." Exhibit A, at p. 8-9.

8.  Further, as an employer obligated to adhere to the CBA, Integrated Environments is required to submit and cooperate with an audit, as follows:

> "That the Trustees of any of the Funds provided for in this Agreement, acting individually or in concert, are empowered to order an audit of the Employer's payroll records with or without cause. The Employer agrees to make accurate financial records available to the authorized auditors upon ten (10) days notice, and to cooperate in the completion of the audit.

> "In the event the audit discloses a willful underpayment of wages and/or benefits, the employer agrees to promptly pay such amounts as reasonably necessary to bring current the obligations plus 2% interest per month on any outstanding balance. Failure of any employer to comply with the correction as determined by an authorized auditor will result in invocation of the delinquency provisions provided for under the Wage and Fringes section of this Agreement." Exhibit A, at 10.

9.  In 2024, Integrated Environments failed to file contribution reports or pay contributions for the months of May through December of 2024, and January through April 2025.

10. Section 502(g)(2) of ERISA (29 U.S.C. § 1132(g)(2)), as amended, provides:

> "**(2)** In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan—

> > **(A)** the unpaid contributions,

> > **(B)** interest on the unpaid contributions,

> > **(C)** an amount equal to the greater of—

> > > **(i)** interest on the unpaid contributions, or

**(ii)** liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

**(D)** reasonable attorney's fees and costs of the action, to be paid by the defendant, and

**(E)** such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under Section 6621 of the Internal Revenue Code of 1986."

11.    Section 515 of ERISA (29 U.S.C. §1145) provides:

"Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

12.    Plaintiff has incurred reasonable attorney fees and court costs as a result of Defendant's failure to submit payroll records for an audit.

**WHEREFORE**, the Plan prays that Integrated Environments be enjoined and ordered to submit to an audit and an accounting be taken as to all employees of Integrated Environments covered by the CBA as to wages received and hours worked by such employees to determine amounts required to be paid to the Plan, covering the period of May 1, 2024, to December 31, 2024. The Plan further prays that Integrated Environments be enjoined and ordered to submit all delinquent monthly contribution reports to the Plan with the information required to be

provided thereon, and to continue to submit any further reports as required by the CBA.

THE BOARD OF TRUSTEES OF SHEET
METAL WORKERS LOCAL 91 HEALTH
WELFARE PLAN,
by ERIC MEIRHAEGHE,
CHAIRMAN OF THE BOARD

By:  /s/ Michael W. Halpin

Michael W. Halpin
Attorney for Plaintiff

McCarthy, Callas & Feeney, P.C.
329 Eighteenth Street
Rock Island, IL 61204-3100
(309) 788-2800
mhalpin@mcfe-law.com

### STANDARD FORM OF UNION AGREEMENT SHEET METAL, ROOFING, VENTILATING AND AIR CONDITIONING CONTRACTING DIVISIONS OF THE CONSTRUCTION INDUSTRY

**Between**

### INTERNATIONAL ASSOCIATION OF THE SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS

### LOCAL UNION NO. 91

**8124 - 42nd Street W., Rock Island, Illinois 61201**

**and**

**ZONE A**

**INDEPENDENT SHEET METAL CONTRACTORS &**

**ILLOWA SHEET METAL CONTRACTORS**

**ASSOCIATION, INC.**

**P.O. Box 1540, Davenport, IA 52809**

**for the period of 6-1-2021   thru 5-31- 2024**

**Agreement entered into this 1st day of June 2021 between Illowa Sheet Metal Contractors Association, Inc. hereinafter referred to as the Employer and Local 91 of the International Association of Sheet Metal, Air, Rail and Transportation Workers hereinafter referred to as the Union for Muscatine, Scott, Counties and all territory south of US 30 in Cedar and Clinton Counties in Iowa, and Henry, Knox, McDonough, Mercer, Rock Island and Warren Counties as well as all of the territory west of Illinois Route 78 and south of US 30 in Whiteside County in Illinois.**

**THE ABOVE COUNTIES SHALL BE REFERRED TO AS ZONE A FOR WAGE PURPOSES.**

Exhibit A

## DEFINITIONS

**For purposes of this contract certain terms used herein shall be defined as follows:**

- **Union means: The International Association of Sheet Metal, Air, Rail and Transportation Workers Local No. 91**
- **SMACNA means: ILLOWA Sheet Metal Contractors Association, Inc.**
- **Employee means: Journeyman, Apprentice, and all classes of classified workers**
- **Employer means: Any of the Sheet Metal Working Contractors, Firms or Companies hiring SMART Local # 91 employees**
- **Whenever the masculine gender is used in this Agreement, it is meant to refer equally to the feminine gender and vice versa.**

**THE FOLLOWING TITLES AND HEADINGS ARE FOR REFERENCE ONLY.**

## ARTICLE I
## SCOPE of WORK

**SECTION 1. This Agreement covers the rates of pay, rules and working conditions of all employees of the employer engaged in but not limited to the manufacture, fabrication, assembling, handling, erection, maintenance, installation, dismantling, conditioning, adjustment, alteration, repairing and servicing of all ferrous or non-ferrous metal work and all other materials used in lieu thereof and of all HVAC, air veyor systems, and air handling systems regardless of material used including the setting of all equipment and all reinforcements in connection therewith; (b) all lagging over insulation and all internal duct lining; (c) testing and balancing of all air-handling equipment and duct work; (d) the preparation of all field sketches used in fabrication and erection, including those taken from original architectural and engineering drawings or sketches; (e) Metal Roofing and (f) all other work included in the jurisdictional claims of the International Association of Sheet Metal, Air, Rail and Transportation Workers.**

**It is expressly included herein, for the purpose of indicating more specifically but not by any means limiting hereto, that this Agreement also covers the furnishing, handling, setting, erecting, installation, assembling, dismantling, adjustment, alteration, reconditioning, repairing and servicing of all warm air furnaces, fans, filters of all types, blowers, sheaves, bolts and guards of all kinds, plenums including prefabricated insulated casings and air chamber panels with or without other equipment; louvers, screens, registers, grilles, diffusers of all kinds, including those in connection with lighting fixtures and ceilings; dampers of all kinds, sound traps, mixing boxes, attenuators of all kinds; access doors related to air handling systems, dryers, sprayers, power and gravity ventilators, acoustical material within duct work; dust and recovery systems, breechings, hoods, convectors and radiator and similar enclosures and covers, with or without backs; flexible tubing and connections thereto and all such or**

similar equipment involved in or in any way related to air handling systems and to all other sheet metal work covered by this Agreement and by the jurisdictional claims of the International Association of Sheet Metal, Air, Rail and Transportation Workers.

Section 2. SMART Local No. 91, AFL-CIO, (Union) claims, and the Employer acknowledges and agrees, based on its own knowledge and the Union's offer to show evidence of majority support, that a majority of its Sheet Metal Employees working in the jurisdiction of the Union have authorized the union to represent them in collective bargaining. The Employer hereby recognizes the Union as the exclusive bargaining representative under Section 9(a) of the National Labor Relation Act of all full-time and regular part-time Sheet Metal Workers on all present and future jobs within the jurisdiction of the Union.

## ARTICLE II
## SUB-CONTRACTING CLAUSE

SECTION 1. No Employer shall subcontract or assign any of the work described herein which is to be performed at a job site to any contractor, subcontractor or other person or party who fails to agree in writing to comply with the conditions of employment contained herein including, without limitations, those relating to union security, rates of pay and working conditions, hiring and other matters covered hereby for the duration of the project.

SECTION 2. Subject to other applicable provisions of this Agreement, the Employer agrees that when subcontracting for prefabrication of materials covered herein, such prefabrication shall be subcontracted to fabricators who pay their Employees engaged in such fabrication not less than the prevailing wage for comparable sheet metal fabrication, as established under provisions of this Agreement.

SECTION 3. It is understood that there may be instances when suitable Union subcontractors may not be available for certain subcontracts. This section shall not apply to any scope of work outlined in Article I.

## ARTICLE III
## LETTERS OF ASSIGNMENT

SECTION 1. The Employer agrees that journeyman, apprentices and sheet metal tradesman sheet metal workers shall be employed on any work described in Article I. And, further, for the purpose of proving jurisdiction, may upon request provide the Union with written evidence of assignment on the Employer's letterhead for certain specified items of work to be performed at a job site prior to commencement of work at the site. List of specific items, which may be revised from time to time, as agreed to by and between SMACNA and SMART, shall be provided to the Employer.

# ARTICLE IV
## HIRE/ DISCHARGE CLAUSE

**SECTION 1.  It is understood that the Employer is at liberty to hire or discharge for just cause whomsoever he sees fit and each Employee is at liberty to work for whomsoever he sees fit.  The Employer shall have the right to determine the number of Employees any certain portion of the work shall require.**

**SECTION 2.  The Union agrees to furnish upon request by the Employer, duly qualified journeyman, apprentice and sheet metal tradesman sheet metal workers in sufficient numbers as may be necessary to properly execute work contracted for by the Employer in the manner and under the conditions specified in this Agreement.**

**SECTION 3. In the event the Employer is entitled to employ a journeyman or apprentice and the Union fails to comply with the Employers written or email request to furnish within forty-eight (48) hours. The Employer may hire such Employees and refer them to the Local Union for enrollment. In the event that no apprentices are available from the out of work list, the Employer may hire the next available apprentice applicant from the Master JATC list.**

**SECTION 4. The Employer retains full and exclusive authority for the management of its operations.**

**SECTION 5.  The Employer agrees that it will notify the Union in writing or email of the name, home address and primary telephone number of each newly hired person who will perform bargaining work within 72 hours of the time the person begins work.  Within 14 days of the date a new employee who is not a member of SMART Local 91 begins work, the Union shall be allowed 15 minutes to meet privately with the new employee during the regular paid workday.  The Union shall take reasonable steps to notify the Employer and schedule the time and date of the meeting so as to minimize disruption of the work schedule for the meeting.**

**SECTION 6.  If the employer provides benefits or wages different or greater than required by this Agreement to any employee performing bargaining unit work who does not permit deduction of Union dues from wages, the Employer shall promptly notify the Union in writing of the benefits and wages provided to the employee.  The Union shall have 14 days from the date it receives notice from the Employer in writing of the benefits and wages provided to the employee to agree the Employer shall extend the same benefits and wages to all employees performing bargaining unit work.  The Employer agrees upon request from the Union in writing it will apply the same benefits and wages to all employees performing bargaining unit work as if the same were set forth in this Agreement.**

4

## ARTICLE V
## REQUIREMENT of MEMBERSHIP

**SECTION 1.** The Employer agrees to require membership in the Union, as a condition of continued employment of all Employees performing any of the work specified in Article I of this Agreement, within thirty (30) days following the beginning of such employment or the effective date of this Agreement, whichever is the later, provided the Employer has reasonable ground for believing that membership is available to such Employees on the same terms and conditions generally applicable to other members and that membership is not denied or terminated for reasons other than the failure of the Employee to tender the periodic dues and initiation fee uniformly required as a condition of acquiring or retaining membership.

**SECTION 2.** If, during the term of this Agreement, the Labor-Management Relations Act of 1947 shall be amended by Congress in such manner as to reduce the time within which an Employee may be required to acquire Union membership, such reduced time limit shall become immediately effective instead of and without regard to the time limit specified in Section 1 of this Article.

**SECTION 3.** The provisions of this Article shall be deemed to be of no force and effect in any state, to the extent to which the making or enforcement of such provisions is contrary to law. In any state where the making and enforcement of such provision is lawful only after compliance with certain conditions precedent, this Article shall be deemed to take effect as to involve Employees immediately upon compliance with such conditions.

## ARTICLE VI
## WORK HOURS/MAKE-UP DAY/HOLIDAYS/SHIFT PROVISION

**SECTION 1.** Except as noted in section 1 (a, b & c) below, the regular working day shall consist of eight (8) consecutive hours labor in the shop or on the job between seven (7:00) a.m. and four-thirty (4:30) p.m. and the regular working week shall consist of five (5) consecutive eight (8) hour days labor in the shop or on the job, beginning with Monday and ending with Friday of each week. All full-time or part-time labor performed during such hours shall be recognized as regular working hours and paid for at the regular hourly rate. Except as otherwise provided pursuant to Section 4 of this Article all work performed outside the regular working hours and performed during the regular work week, shall be paid at one-and-one-half (1-1/2) times the regular rate. Employees shall be at the shop or project site at scheduled starting time each day and shall remain until quitting time. When an employee has worked twelve (12) consecutive hours and has not been released, the employee shall be paid double-time thereafter for all additional hours worked. A six (6) hour break is required before the pay rate can be reduced.

## FOUR-DAY WORK WEEK

**SECTION 1(a) The Union and the Employer may establish a four-day workweek consisting of four (4) ten-hour days. All work performed beyond ten (10) hours in one day or forty (40) hours in one (1) week in the four-day workweek will be paid at the prescribed overtime rate, except where Prevailing Wage Act (IL Prevailing Wage Act 820 ILCS 130/) requires overtime pay after eight (8) hours.**

**Each Employee shall receive three (3) consecutive days off work.  If an Employee works any of the following days, depending on the Monday thru Thursday schedule or the Tuesday thru Friday schedule, he shall receive one and one-half (1 ½) times the regularly established hourly rate for Friday, Saturday, and Monday and two (2) times the regular hourly rate for Sunday.**

**MAKE – UP DAY.  If an Employee is unable to work Monday thru Thursday or Tuesday thru Friday, the Employer may work the Employee on Friday or Saturday, as a voluntary make-up day at the established regular hourly rate. The conditions that constitute a voluntary make up day are not to be used to circumvent contractual premium pay.**

**SECTION 1 (b) When inclement weather is a governing factor, and when at least two thirds (2/3) of the men employed on the project and the Employer agree, any eight (8) hour period between daylight and dark may be considered a regular workday.  This may not, however, be made mandatory for those Employees not in agreement, nor can they be discharged for this reason.  Additionally, and subject to the same qualifications as above, Saturday may be used as a makeup day and the overtime rate not to apply until after the employee has worked forty (40) hours in one week. When the customer and contractor also agree, there may be up to two (2) hours variation in the regular starting time.  This last, however, must be cleared by the Union Business Office.**

**SECTION 1 (c) Residential installers and residential service technicians may work forty (40) hours Monday – Friday or Tuesday – Saturday for straight time on a voluntary basis.  Saturdays in section two (2) of this article shall not apply to individuals working Tuesday – Saturday.**

**SECTION 2.   New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas and all Sundays shall be recognized as holidays.  Employees, if required to work on these days, shall be compensated at two (2) times the regular hourly rate. Also, the day after Thanksgiving and all Saturdays shall be considered minor holidays. Employees, if required to work on these days, shall be compensated at one-and-one-half (1-1/2) times the regular hourly rate.  Veterans Day will be a regular workday that employees will have the option to observe as a holiday, however, regular hourly rates shall apply.**

**NOTE:  In the event there is a conflict between the State of Iowa or Illinois and the Federal Government on the observance of any of the above-mentioned holidays, the observance day of the Federal Government shall prevail.  If a holiday falls on Saturday it shall be observed on Saturday; if it falls on Sunday, it shall be observed on Monday.**

**SECTION 3.  It is agreed that all work performed outside of regular working hours during the regular workweek and on holidays shall be performed only upon notification by the Employer to the Local Union in advance of scheduling such work.**

## SHIFT WORK PROVISION

**SECTION 4.  Employees when required to work a second shift shall be compensated at the rate of straight time plus a bonus of fifteen (15%) percent for an eight (8) hour shift. Employees, when required to work a third (3rd) shift shall be compensated at the rate of straight time plus a bonus of fifteen (15%) percent for an eight-hour shift. Lunch hour will not be included in the eight (8) hour period.  Shift work cannot be established for a period of less than three (3) consecutive eight (8) hour working days Monday thru Friday. In the event that the Employee is requested by the Employer and the shift schedule does not last the three (3) consecutive eight (8) hour workdays, the applicable overtime rate for those hours worked during the off shift shall prevail. The employer shall notify the Union Business Office prior to the establishment of any shift work.  The employer, at their discretion, may vary the shift starting time by up to two (2) hours no more than once per week.**

**Following is the established shifts:**
**1st Shift – 7:00 a.m. - 4:30 p.m. (Straight Time)**
**2nd Shift – 3:00 p.m. – 12:30 a.m. (15%)**
**3rd Shift – 11:00 p.m. -8:30 a.m. (15%)**

**All work performed before or after an assigned shift shall be at the applicable shift premium plus the applicable overtime rate of pay.**

## ARTICLE VII
## DAILY PER DIEM

SECTION 1. **The employer may provide or pay for all necessary employee transportation during working hours. The Employer shall not be required to pay a per diem for travel within 55 miles of the I-80 / I-280 By-pass.  Mileage from the I-80 / I-280 By-pass as an exit or entrance point will be as calculated by www.mapquest.com" or equivalent using the shortest time setting.**

4

## USE OF COMPANY VEHICLE FOR THE EMPLOYEE'S CONVENIENCE

**The Employee, when using the Employer's vehicle within the limits as defined in this Article for his own convenience and outside the regular working hours, shall receive no travel or mileage allowance. The Employee may be permitted to use this vehicle to transport himself to his home, after work to transport himself to the job or shop the following working day.**

**In addition to the home area, each employer shall have a no per diem zone, which extends fifty-five (55) miles from its home area.**

**QUINT-CITIES: I-80 / I-280 By-pass**

**BURLINGTON: The area within the corporate limits of the cities of Burlington and West Burlington, Iowa.**

**DUBUQUE: The area within the corporate limits of the city of Dubuque, Iowa.**

**GALESBURG: The area within the corporate limits of Galesburg, Illinois.**

**KEOKUK: The area within the corporate limits of Keokuk, Iowa.**

**FT. MADISON: The area within the corporate limits of Ft. Madison, Iowa.**

**OTTUMWA: The area within the corporate limits of Ottumwa, Iowa.**

**QUINCY: The area within the corporate limits of Quincy, Illinois.**

## USE OF PERSONAL VEHICLE

**SECTION 1(a). Journeyman, apprentices and sheet metal tradesman sheet metal workers covered by this Agreement shall not be permitted or required as a condition of employment to furnish the use of automobile or other conveyance to transport men, tools, equipment or materials from shop to job, from job to job or from job to shops; facilities for such transportation to be provided by the Employer. This provision shall not restrict the use of an automobile or other conveyance to transport its owner and personal tools from home to shop or job at starting time or from job to home at quitting time.**

## PER DIEM EXPENSE

**SECTION 2. When an Employer assigns an Employee to perform work outside the zone defined in Section 1, regardless of transportation provided by the Employee or Employer, the following per diem schedule is applicable to each Employee assigned:**

- **0 to 55 miles – No per diem**
- **Greater than 55 to 90 miles -- $30**
- **Greater than 90 miles to 150 miles -- $80**
- **Greater than 150 miles – To be mutually agreed upon by both Employee and Employer.**

**The $80.00 amount is based on a $30.00 expense allowance per day and a $50.00 accommodation allowance per night with a maximum of $350.00 per week, Monday thru Friday. The intent of the accommodation allowance is for the Employee to utilize the allowance for that purpose. If, in fact, the Employee completes his or her work and returns back to their home area and do not require accommodations for that evening, the $50.00 accommodation allowance will not be applicable. The above schedule is payable to all Employees that report for work but are unable to work because of inclement weather or other reasons not in control of the Employee.**

## ARTICLE VIII
## WAGES/FRINGES/CONDITIONS/SHOW-UP TIME
## 2-MAN RULE/LAYOFF-PAYOFF

**The following schedule of minimum wage rates, contributions and/or withholdings for journeyman sheet metal workers shall be in effect for the life of the working agreement. All dates shall be inclusive.**

**SECTION 1.  FRINGE BENEFITS**

**The fringe benefits shall be identical for all Journeymen in all Counties in the ZONE A area and shall apply to hours worked by covered employees of the employer.**

**WAGE RATE EFFECTIVE 1 JUNE 2021 THRU 31 MAY 2022**

|  | Journeyman | Foreman | General Foreman |
|---|---|---|---|
| Base Rate................................... | 36.35 | 38.81 | 41.26 |
| H & W Fund ................................ | 7.14 | 7.14 | 7.14 |
| Annuity Fund ................................ | 8.20 | 8.20 | 8.20 |
| Nat'l Pension Fund .......................... | 6.64 | 6.64 | 6.64 |
| SASMI Fund................................... | 1.75** | 1.75** | 1.75** |
| IFUS ........................................ | .32 | .32 | .32 |
| JATC Fund .................................. | .85 | .85 | .85 |
| ITI.......................................... | .12 | .12 | .12 |
| NEMIC....................................... | .03 | .03 | .03 |
| SMOHIT ..................................... | .02 | .02 | .02 |
| **TOTAL PACKAGE** .............. | **$61.42** | **$63.88** | **$66.33** |

**\*\* SASMI CONTRIBUTION IS AN APPROXIMATION – USE 3% FORMULA**

**A DEDUCTION OF: one point eight percent (1.8%) times the total journeyman wage package per hour is a working assessment and can be eliminated and put back on the Base Rate, International Association hourly working assessment ($0.18 current) as governed by the International Association of Sheet Metal, Air, Rail and Transportation Workers and seven ($.07) cents to the Building Trades Council.**

**All of the above fringe benefits are to be reported monthly on forms provided for this purpose.**

**IMPORTANT NOTE:  If and when any or all fringe benefits are discontinued, for any reason, then the monies thus exposed is to revert to wages.  This shall not apply to the original ten cents ($.10) per hour used to establish the Health and Welfare Plan, nor shall it apply to more than one-half of the Apprenticeship and Training Fund.**

**WAGES AND FRINGES**

**SECTION 2.  In ZONE A of the Local Union, as per areas listed on page one the following wage scale is applicable:**

1. **$61.42 per hour from 6-1-2021 thru 5-31-2022 ($1.65 increase)**

2. **$63.17 per hour from 6-1-22 thru 5-31-23 ($1.75 increase)**

3. **$64.92 per hour from 6-1-23 thru 5-31-24 ($1.75 increase)**

**IT IS AGREED THAT THE UNION MAY CHOOSE AT THESE TIMES TO USE ANY OF THESE INCREASES IN THE FORM OF ADDITIONS TO ANY OF THE FRINGE BENEFITS IN EXISTENCE AT THAT TIME.**

**SECTION 3.  The Agreement and Declaration of Trust creating the following funds are hereby made a part of this Collective Bargaining Agreement.**

* **SASMI (Stabilization Agreement of the Sheet Metal Industry).**
* **The Sheet Metal Workers National Pension Fund.**
* **The Sheet Metal Workers Local Union No. 91 Health and Welfare Fund.**
* **The Illowa-SMW Local 91 Joint Apprenticeship and Training Fund.**
* **The International Training Institute (ITI) for the Sheet Metal and Air Conditioning Industry.**
* **NEMIC (National Energy Management Institute Committee.)**
* **IFUS (The Illowa Sheet Metal Contractor's Industry Fund).**
* **SMOHIT (Sheet Metal Occupational Health Institute Trust.)**
* **Annuity (The Sheet Metal Workers Local No. 91 Annuity Plan).**

**In order to simplify the method by which Employers must make the contributions as outlined under "Fringe Benefits", the Employer will be furnished by the Insurance carrier for the Sheet Metal Workers National Pension Fund, a pre-printed form by the fourth of the month following the month to be reported for and he shall add and/or delete any Employee's names as applicable, fill out all columns, remove the Employer copy and forward the rest of the copies with two checks covering both the local and national benefits to SMART Local 91, 8124 - 42nd St. West, Rock Island, IL 61201 postmarked by the fifteenth of the month, and shall be adjudged delinquent if he has not complied with this procedure.**

**Failure of the Employer to remit promptly the payroll report or contribution payments on or before the fifteenth day of the following month shall be a violation of this Agreement. The Employer shall be liable to the Union and/or Funds for any costs relating to the collection of any delinquent reports or monies due, including attorney fees, as set forth below.**

**If, on the fifteenth day of the said following month, the Employer has failed to file an accurate report, then on the first working day after the fifteenth, he may suffer a work stoppage on the job(s) or in the shop(s).  This stoppage shall continue until all reports due have been filed.  The contractor shall then also be immediately placed on a Delinquent List.**

**If a contractor's name appears on the Delinquent List and the contractor, within the immediately following twelve months, fails to either file a report when due or make timely contributions when due, the contractor shall be required to immediately post a surety bond or cash bond before he is allowed to resume work.**

**The bond shall be in the amount of four thousand ($4,000.00) dollars per employee based on the average number of men employed during the preceding year, or the number employed immediately before his second appearance on the Delinquent list, whichever is greater.**

Said surety or cash bond shall be for the faithful payment of all wages and fringe benefits required under this Agreement.

The minimum amount of the bond shall be eight thousand ($8,000.00) dollars.

In the event the Employer fails to post said bond, the Union shall have the privilege of advertising non-payment of said wages and fringes to the public and in addition may pursue any and all other remedies that the Union and/or the Funds may deem appropriate or necessary.

No employee has any obligation to work while his wages and/or fringe benefit contributions are delinquent and a work stoppage may be called for a wage and/or benefit payment delinquency at any time.

Furthermore, the provisions of any no strike clause in this Agreement shall not be applicable.

In addition to said bond, as set forth above, the Employer shall pay an additional 15% delinquent fee as and for liquidated damages for the first month that any report is not filed and 10% per month thereafter, cumulative. Damages shall be accumulative and the parties agree that said damages are penal in nature and are designed to encourage the prompt and accurate filing of all reports. The sum of liquidated damages shall be determined by the average of the Employers' three most recent reports.

If, on the fifteenth day of said following month, the Employer has filed an accurate report but has failed to remit proper payment, then, the employer shall be placed on a Delinquent list and shall be assessed interest on the unpaid contributions in the amount of 2% per month plus a 10% liquidated damage fee for the first thirty days.

If said Employer either fails to file a proper report or fails to make proper and accurate payment of all contributions for any month within the twelve months immediately subsequent to the Employer being placed on the Delinquent list, then, the Employer shall suffer a work stoppage on the job or in the shop. This work stoppage shall continue until all the contributions due have been paid and there shall be no loss of pay to the Employees during this work stoppage.

The contractor shall also be required to post a bond as required above. The Union and/or the Funds retain all rights to publish or advertise non-payment of fringes or take any other action as may be reasonably necessary to secure proper and accurate payment of all benefit contributions plus interest and damages.

In the event the Employer is on the Delinquency list and becomes delinquent again, for any reason within the twelve immediately succeeding months, then, the Employer shall be assessed and pay liquidated damages in the amount of 20% or such greater amount as may be allowed under 29 U.S.C. 1132(g) (2) plus attorney fees, court costs and interest at the rate of 2% per month until such contributions are paid in full.

That the Trustees of any of the Funds provided for in this Agreement, acting individually

or in concert, are empowered to order an audit of the Employer's payroll records with or without cause. The Employer agrees to make accurate financial records available to the authorized auditors upon ten (10) days notice and to cooperate in the completion of an audit.

In the event the audit discloses a willful underpayment of wage and/or benefits, the Employer agrees to promptly pay such amounts as reasonably necessary to bring current the obligations plus pay 2% interest per month on any outstanding balance. Failure of any Employer to comply with the correction as determined by an authorized auditor will result in invocation of the delinquency provisions provided for under the Wages and Fringes section of this Agreement.

If there is any reason why the Employer does not pay the stipulated amount to the "Industry Fund" then this monetary amount shall be paid to the "Joint Apprenticeship and Training Fund".

SECTION 4.  On all work specified in Article 1 of this Agreement, fabricated and/or assembled by journeyman sheet metal workers, apprentices, and/or sheet metal tradesman with the jurisdiction of this Union, or elsewhere, for erection and/or installation within the jurisdiction of any other Local Union territory affiliated with the International Association of Sheet Metal, Air, Rail and Transportation Workers whose established wage scale is higher than the wage scale specified in this Agreement, the higher wage scale shall be paid to the Employees employed on such work in the home shop or sent to the job site.

In addition, the point of installation within the geographical jurisdiction of this Local Union shall determine the minimum wages paid on fabrication and/or erection for a project.

SECTION 5.  The provisions of Section 4 of this Article, Section 2 of Article II and Section 1 of Article III shall not be applicable to the manufacture for sale to the trade or purchase of the following items:

1. Ventilators
2. Louvers
3. Automatic and fire dampers
4. Radiator and air conditioning unit enclosures
5. Fabricated pipe and fittings for residential installations only
6. Mixing (attenuation) boxes
7. Plastic skylights
8. Air diffusers, grilles, and registers
9. Sound attenuators
10. Chutes
11. Round pipe and fittings up to 12" in diameter to be used on residential and commercial work only.
12. Spiral Pipe and Fittings

13. Double wall stacks
14. Any work covered by an Industrial Addendum to the SFUA.

SECTION 6.  The provisions of Section 4 of this Article shall not be applicable to the manufacture for sale to the trade or purchase of PLENUMS -- Double wall panels for use in construction in air housing, nor to AIR POLLUTION CONTROL SYSTEMS fabricated for the purpose of removing air pollutants, excluding air conditioning, heating and ventilating systems.

SECTION 7.  Except as provided in Section 5 and 6 of this Article, the Employer agrees that journeyman sheet metal workers hired outside of the territorial jurisdiction of this Agreement shall receive the wage scale and working conditions of the Local Agreement covering the territory in which such work is performed or supervised.

SECTION 8.  When the Employer has any work specified in Article I of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by another Agreement with another Union territory affiliated with the International Association of Sheet Metal, Air, Rail and Transportation Workers  and qualified sheet metal workers are available in such area, he may send no more than two (2) sheet metal workers per job into such area to perform any work which the Employer deems necessary, both of whom shall be from the Employer's home jurisdiction.  All additional sheet metal workers shall come from the area in which the work is to be performed.  Sheet metal workers covered by this Agreement who are sent outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Section 1 of this Article but in no case less than the established wage scale of the Local Agreement covering the territory in which such work is performed or supervised, plus all necessary transportation, travel time, board and expenses while employed in that area, and the Employer shall be otherwise governed by the established working conditions of that Local Agreement.  If Employees are sent into an area where there is not a local Agreement of the International Association of Sheet Metal, Air, Rail and Transportation Workers covering the area then the minimum conditions of the home Local Union shall apply.

SECTION 9.  In applying the provisions of Sections 4, 7, 8, and 11 of this Article VIII, the term "wage scale" shall include the value of all applicable hourly contractual benefits in addition to the hourly wage rate provided in said Sections.

SECTION 10.  Welfare benefit contributions shall not be duplicated.

When sheet metal workers are employed temporarily outside the jurisdiction of their home local union, the party's signatory to this Agreement agree to arrange through the Health and Welfare Trust Fund to transmit health and welfare contributions made on behalf of the employee to the Health and Welfare Trust Fund in the employee's home local

union.

The parties to this Agreement agree to establish a system for continuing health and welfare coverage for employees working temporarily outside the jurisdiction of the local collective bargaining agreement when health and welfare contributions are transmitted on their behalf by trust funds from other areas.

When sheet metal workers are temporarily employed outside the jurisdiction of their home local union, the party's signatory to this agreement shall arrange to transmit any 401 (k) contributions required to be made to a 401 (k) plan where the work is performed to a 401 (k) plan established for the employee's home local union, and/or to the National Supplemental Savings Fund.

This obligation is conditioned upon a suitable reciprocity arrangement being agreed to by the trustees of such plans.

SECTION 11.  Wages at the established rates specified herein shall be paid in cash, check, or direct deposit (on a voluntary basis) in the shop or on the job at or before quitting time on Friday of each week and no more than seven (7) days pay will be withheld.  The employer may require direct deposit of all new hires.  When employing the direct deposit method, the employer will provide an option for the deposit to be made in portions to two (2) or more authorized accounts.  However, Employees, when discharged, shall be paid in full within twenty-four (24) hours of the first regular working day following the date of discharge, payoff shall be by personal collection at the shop or by mail or by direct deposit whichever is mutually agreed upon between the Employer and the Employee. Also if payoff is to be mailed there will be a monetary penalty of two (2) hours pay at the applicable wage scale for each day that the discharge pay is <u>not</u> postmarked by the first regular working day following the date of discharge. This provision shall apply to all contractor's signatory to a Local 91 Bargaining Agreement. Also, any and all contractors hiring Local 91 Employees and not signatory to a Local 91 Bargaining Agreement shall pay Employees in full upon discharge.

SECTION 11 (A). Employees shall accurately and timely report their time worked to the Employer. Time reported after the following Monday at noon may be paid with subsequent pay period.

SECTION 12.  Journeyman sheet metal workers, who report for work by direction of the Employer and are not placed to work, shall be entitled to two (2) hours pay at the established rate. This provision, however, shall not apply under conditions over which the Employer has no control.  In addition, Employees who report for work at the direction of the Local and at the request of the Employer are not placed to work by the Employer, shall, on the first day of employment, receive two (2) hours reporting time, regardless of circumstances.  It shall be further agreed that the Employee if placed to work or retained longer than the

12

aforementioned two hours, will be paid a minimum of four hours. If this working or waiting period exceeds four hours, he shall be paid a minimum of six (6) hours, and if said working or waiting period exceeds six (6) hours, he shall be paid for a full eight (8) hour day. All of the above-mentioned pay shall be at the specific Employee's established rate. This section shall not apply to emergency HVAC Service work.

When an employee is driving to and from the job each day, and the job is far enough from his home that the weather in the two areas could differ enough to affect working conditions, then arrangements shall be made between the sheet metal supervisor on the job and the Employee so that the Employee is able to determine before leaving home what the weather is like at the job site. These arrangements shall be set up so as to be mutually acceptable to the two parties involved. If these arrangements cannot be made then the show-up time as outlined above, not including the reference to conditions over which the employer has no control, shall prevail.

SECTION 13. Each Employer covered by this Agreement shall employ at least one (1) journeyman sheet metal worker who is not a member of the firm on all work specified in Article I of this Agreement.

SECTION 14 Contributions provided for in this Article will be used to promote programs of industry education, training, negotiation and administration of collective bargaining agreements, research and promotion, such programs serving to expand the market for the services of the sheet metal industry, improve the technical and business skills of Employers, stabilize and improve Employer-Union relations, and promote, support, and improve the employment opportunities for Employees. No part of any such payments, however, shall be used for any other purpose except as expressly specified above.

(a) The IFUS shall submit to the International Association of Sheet Metal, Air, Rail and Transportation Workers, not less often than semi-annually, written reports describing accurately and in reasonable detail, the nature of activities in which it is engaged or which it supports directly or indirectly with any of its funds. One time per year, the IFUS shall include in such written report a financial statement attested by a certified public accountant containing its balance sheet and detailed statement of annual receipts and disbursements. Further specific detailed information in regard to IFUS activities or its receipts and/or expenditures shall be furnished to the International Association of Sheet Metal, Air, Rail and Transportation Workers upon written request.

(b) Grievances concerning use of IFUS funds for purposes prohibited under Section 13(a) or for violations of other subsections of this Section may be processed by the International Association of Sheet Metal, Air, Rail and Transportation Workers directly to the National Joint Adjustment Board under the provisions of Article X of this Agreement. In the event such proceedings result in a deadlock, either party may, upon ten (10) days notice to the other party, submit the issue to final and binding arbitration. The arbitrator shall be selected by the

Co-Chairmen of the National Joint Adjustment Board.  The Arbitrator shall be authorized to impose any remedial order he deems appropriate for violation of the Section, including termination of the Employer's obligation to contribute to the IFUS.  The authority of the Arbitrator is expressly limited to a determination of a deadlocked issue under this Section, (Section 13, Article VIII), and no other.

SECTION 15 The Employer shall pay to the Illowa Sheet Metal Industry Fund, (hereinafter referred to as the local industry fund), current contribution rate for each hour worked on or after the effective date of this Agreement by all Employees of the Employer covered by this Agreement.

(a) The fund shall furnish to the Business Manager of the Union, not less often than semi-annually, written reports describing in reasonable detail the nature of activities in which it is engaged or which it supports directly or indirectly with any of its funds.  One time per year, the Fund shall include in such written report, a statement attested by a certified public accountant and containing its balance sheet and detailed statement of receipts and disbursements.  Further specific detailed information in regard to Fund activities or its receipts and/or disbursements shall be furnished to the Business Manager of the Union upon his written request.

(b) Grievances concerning use of local industry fund monies to which an Employer shall contribute for purposes prohibited under Section 14(a) or for violations of other subsections of this Section shall be handled under the provision of Article X of this Agreement.  The National Joint Adjustment Board shall be authorized to impose any remedial order for violation of this Section, including termination of the Employer's obligation to contribute to the local industry fund.

### ARTICLE IX
### HAND TOOLS

SECTION 1. Journeyman and Apprentice Sheet Metal Workers covered by this Agreement shall provide for themselves all necessary hand tools. See attached Addendum No. 12 for necessary hand tool list.

### ARTICLE X
### GRIEVANCE PROCEDURE

SECTION 1.  Grievances of the Employer or the Union, arising out of interpretations or enforcement of this Agreement, shall be settled between the Employer directly involved and the duly authorized representative of the Union, if possible.  An Employer may have the Local Association present to act as his representative.

"To be valid, grievances must be raised within thirty (30) calendar days following the

14

occurrence giving rise to the grievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of first knowledge of the facts giving rise to the grievance."

SECTION 2.  Grievances not settled as provided in Section 1 of this Article may be appealed by either party to the Local Joint Adjustment Board in the area in which the work is performed and such Board shall meet promptly on a date mutually agreeable to the members of the Board, but in no case more than fourteen (14) calendar days following the request for its services, unless the time is extended by mutual agreement of the parties, to render a final and binding determination, except as provided in Sections 3 and 5 of this Article.  The Board shall consist of an equal number of representatives of the Union and of the Local Employers' Association and both sides shall cast an equal number of votes at each meeting.  The local Employers' Association, on its own initiative, may submit grievances for determination by the Board as provided in this Section.

Notice of appeal to the Local Joint Adjustment Board shall be given within thirty (30) days after termination of the procedures prescribed in Section 1 of this Article, unless the time is extended by a mutual agreement of the parties.

SECTION 3.  Grievances not disposed of under the procedure prescribed in Section 2 of this Article, because of a deadlock or failure of such Board to act, may be appealed jointly or by either party to a Panel consisting of one (1) representative appointed by the General President of the International Association of Sheet Metal, Air, Rail and Transportation Workers and one (1) representative appointed by the Chairman of the Labor Relations Committee of Sheet Metal and Air Conditioning Contractor's National Association, Inc. Appeals on behalf of Employees shall be mailed to the General Secretary-Treasurer of the International Association of Sheet Metal, Air, Rail and Transportation Workers and those on behalf of an Employer mailed to the Secretary of the Labor Committee of the Sheet Metal and Air Conditioning Contractors' National Association, Inc.  Joint appeals shall be mailed to the Secretaries of both Associations.  Notice of appeal to the Panel shall be given within thirty (30) days after termination of the procedures prescribed in Section 2 of this Article.  Such Panel shall meet promptly but in no event, more than fourteen (14) calendar days following receipt of such appeal, unless such time is extended by mutual agreement of the Panel members.  Except in case of deadlock, the decision of the Panel shall be final and binding.

Notwithstanding the provisions of Paragraph 1 of this Section, a Contractor who was not a party to the labor agreement of the area in which the work in dispute is performed may appeal the decision of the Local Joint Adjustment Board, including a unanimous decision, and request a Panel hearing as set forth in Section 3 of this Article, providing such appeal is approved by both the Chairman of the Labor Relations Committee of Sheet Metal and Air Conditioning Contractors' National Association, Inc. and by the General President of the International Association of Sheet Metal, Air, Rail and Transportation Workers.

SECTION 4.  Grievances not settled as provided in Section 3 of this Article may be appealed jointly or by either party to the National Joint Adjustment Board, as established

15

by the International Association of Sheet Metal, Air, Rail and Transportation Workers and the Sheet Metal and Air Conditioning Contractors' National Association, Inc. Submission shall be made and decisions rendered under such procedures as may be prescribed by such Board, from time to time, and mutually approved by the parties creating it. Copies of the procedures shall be available from, and submissions of grievances may be made to, either the General Secretary-Treasurer of the International Association of Sheet Metal, Air, Rail and Transportation Workers or the Secretary of the Labor Committee of the Sheet Metal and Air Conditioning Contractors' National Association, Inc. Submission on appeal to the National Joint Adjustment Board shall be made within thirty (30) days after termination of the procedures prescribed in Section 3 of this Article.

SECTION 5.    A Local Joint Adjustment Board Panel and the National Joint Adjustment Board are empowered to render such decisions and grant such relief to either party as they deem necessary and proper, including awards of damages or other compensation and, if it is believed warranted, to direct that the involved agreement and any other agreement or agreements between the Employer and any other local union affiliated with the International Association of Sheet Metal, Air, Rail and Transportation Workers be canceled, provided that any decision of a Local Joint Adjustment Board directing cancellation of an agreement or agreements may be appealed by the affected Employer or Local Union as a matter of right, directly to the National Joint Adjustment Board.

SECTION 6.    In the event any party fails or refuses to comply with any decision of a Local Joint Adjustment Board or Panel, without appeal, or any decision of the National Joint Adjustment Board, within thirty (30) days after notice thereof, a Local Joint Adjustment Board Panel, or any parties to the dispute may, in addition to any other legal remedies which may be available to the parties, request the National Joint Adjustment Board to cancel the involved agreement and any other agreements between the involved Employer and other Local Unions affiliated with the International Association of Sheet Metal, Air, Rail and Transportation Workers. Unless otherwise decided by unanimous vote, the National Joint Adjustment Board shall cancel such agreements if it finds the involved party to be in non-compliance with the decision in question. Requests for the Board's services shall be made in the same manner and in the same form as other appeals to the National Joint Adjustment Board and the procedure followed shall be the same except that any intermediate step or steps shall be omitted and the request made directly to the National Joint Adjustment Board.

SECTION 7.    Failure to exercise the right of appeal at any step thereof within the time limit provided there for shall void any right of appeal applicable to the facts and remedies of the grievances involved. There shall be no cessation of work by strike or lockout during the pendency of the procedures provided for in this Article. Except in case of deadlock, the decision of the National Joint Adjustment Board shall be final and binding.

SECTION 8.    In addition to the settlement of grievances arising out of interpretation or enforcement of this Agreement as set forth in the preceding sections of this Article, any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this

Agreement shall be settled as hereinafter provided:

(a) Should the negotiations for renewal of this Agreement become deadlocked in the opinion of the Local Union or of the Local Contractors' Association, or both, notice to that effect shall be given to the office of the General President of the International Association of Sheet Metal, Air, Rail and Transportation Workers and the national office of the Sheet Metal & Air Conditioning Contractors' National Association, Inc. If the General President of the International Association of Sheet Metal, Air, Rail and Transportation Workers and the Chairman of the Labor Committee of Sheet Metal and Air Conditioning Contractors' National Association believe the dispute might be adjusted without going to final hearing before the National Joint Adjustment Board, each will then designate a panel representative who shall proceed to the Local where the dispute exists as soon as convenient, attempt to conciliate the differences between the parties and bring about a mutually acceptable agreement.

If such panel representatives or either of them conclude that they cannot resolve the dispute, the parties thereto and the General President of the International Association of Sheet Metal, Air, Rail and Transportation Workers and the national office of Sheet Metal and Air Conditioning Contractors' National Association shall be promptly so notified without recommendation from the panel representatives. Should the President of the International Association of Sheet Metal, Air, Rail and Transportation Workers and the Chairman of the Labor Committee of Sheet Metal and Air Conditioning Contractor' National Association fail or decline to appoint a panel member or should notice be given of failure of the panel representatives to resolve the dispute, the parties shall promptly be notified so that either party may submit the dispute to the National Joint Adjustment Board. The dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the National Joint Adjustment Board.

The unanimous decision of said Board shall be final and binding upon the parties, reduced to writing, signed and mailed to the parties as soon as possible after the decision has been reached. There shall be no cessation of work by strike or lockout unless and until said Board fails to reach a unanimous decision and the parties have received written notification of its failure.

(b) Any application to the National Joint Adjustment Board shall be on forms prepared for that purpose subject to any changes, which may be decided by the Board from time to time. The representatives of the parties who appear at the hearing will be given the opportunity to present oral argument and to answer any questions raised by members of the Board. Any briefs filed by either party including copies of pertinent exhibits will also be exchanged between the parties in advance of the hearing.

(c) The National Joint Adjustment Board shall have the right to establish time limits which must be met with respect to each, and every step or procedure contained in this section. In addition, the President of SMART and the Chairman of the National Labor Committee of SMACNA shall have the right to designate time limits which will be applicable to any

17

particular case and any step therein which may be communicated to the parties by mail, telegram, or telephone notification.

(d) Unless a different date is agreed upon mutually between the parties or is directed by the unanimous decision of the National Joint Adjustment Board, all effective dates in the new agreement shall be retroactive to the date immediately following the expiration date of the expiring agreement.

## ARTICLE XI
## APPRENTICE/SHEET METAL TRADESMAN/JATC

SECTION 1.  All duly qualified apprentices shall be under the supervision and control of the Illowa SMART Local Union No. 91 Joint Apprenticeship and Training Committee.  This Committee shall be composed of an equal number of members, of whom shall be selected by the Employer, and by the Union.  Said Committee shall formulate and make operative such rules and regulations as they may deem necessary and which do not conflict with the specific terms of this Agreement, to govern eligibility, registration, education, transfer, wages, hours, working conditions of duly qualified apprentices and the operation of an adequate apprentice system to meet the needs and requirements of the trade.  Said rules and regulations when formulated and adopted by the parties hereto shall be recognized as part of this Agreement.

SECTION 1(a) It is hereby agreed that the Employer may apply to the Local Union, which shall grant apprentice or sheet metal tradesman on the basis of the following schedule:

| Number of Journeymen | Number of Apprentices | Number of Sheet Metal Tradesman |
|---|---|---|
| 1 | 1 | 1 |
| 3 | 1 | 2 |
| 6 | 2 | 2 |
| 9 | 3 | 3 |
| 12 | 4 | 4 |
| 15 | 5 | 4 |
| 18 | 6 | 4 |
| 21 | 7 | 6 |
| 24 | 8 | 6 |
| 27 | 9 | 6 |
| 30 | 10 | 8 |
| 33 | 11 | 8 |
| 36 | 12 | 8 |
| 39 | 13 | 10 |
| 42 | 14 | 10 |
| 45 | 15 | 10 |
| 48 | 16 | 12 |

18

| | | |
|---|---|---|
| 51 | 17 | 12 |
| 54 | 18 | 12 |
| 57 | 19 | 14 |
| 60 | 20 | 14 |
| 63 | 21 | 14 |

Any apprentice of the Employer on layoff at the effective date of this Agreement must be rehired before said Employer is entitled to any additional apprentices or sheet metal tradesman. Thereafter, the same conditions and ratios shall apply. The Employer may add, at any time, an apprentice or sheet metal tradesman if qualified under the ratio requirement.

An apprentice or sheet metal tradesman may perform any work covered by Article I of which they are capable and will work under the general direction of a journeyman. Fifth (5th) year apprentices are allowed to work unsupervised without a journeyman in the field on work covered by Article I of which they are capable.

The wage scale for sheet metal tradesman shall be not less than forty percent (40%) of the base wage rate of journeyman sheet metal workers or minimum wage whichever is greater; Local #91 Health and Welfare (current) Sheet Metal Workers National Pension Fund (contribution current to NPF Alternative Schedule), International Training Institute (ITI), National Energy Management Institute Committee (NEMIC) and Sheet Metal Occupational Health Institute Trust (SMOHIT) benefits will be paid on behalf of the sheet metal tradesman along with the current contribution rate per hour contractor contribution to the Illowa Sheet Metal Contractor's Industry Fund (IFUS).

In the event the Employer is entitled to employ a sheet metal tradesman and the Union fails to comply with the Employer's written request to furnish a sheet metal tradesman within forty-eight (48) hours, the Employer may hire such Employees and refer to the Local Union for enrollment.

SECTION 2. The Joint Apprentice and Training Committee designated herein shall serve for the life of this Agreement except that vacancies in said Joint Apprentice Committee caused by resignation or otherwise, may be filled by either party hereto, and it is hereby mutually agreed by both parties hereto, that they will individually and collectively cooperate to the extent that duly qualified apprentices be given every opportunity to secure proper technical and practical education experience in the trade, under the supervision of the Joint Apprentice Committee.

SECTION 2 (a). It is the understanding of the parties to this agreement that the funds contributed by signatory Employers to the Fund and any Local Joint Apprenticeship and Training Fund (Local JATC) will not be used to train apprentices or journeymen who will be employed by Employers in the Sheet Metal Industry not signatory to a collective bargaining agreement providing for contributions to the Fund and a Local JATC. Therefore, the trustees

19

of the Fund and Local JATC shall adopt and implement a Scholarship Loan Agreement Program which will require apprentices and journeymen employed by signatory Employers to repay                                                                                               the cost of training either by service following training within the Union sector of the industry or by actual repayment of the cost of training if the individual goes to work for a non-signatory employer in the Sheet Metal Industry.  The cost of training shall include the reasonable value of all Fund and Local JATC materials, facilities and personnel utilized in training.  If a local JATC does not implement the Scholarship Loan Agreement, the Local JATC shall be prohibited from utilizing fund materials and programs.

SECTION 3.  Apprenticeship training qualifications of an individual Employer shall be established by the Joint Apprenticeship and Training Committee.  Qualified Employers shall be entitled to apprentices according to the aforementioned schedule using the same criteria of the employed journeymen ratio, to be steadily employed by the contractor throughout the year, and for each additional apprentice when not less than three (3) additional journeymen are steadily employed by him throughout the year.  The Employer may use his overall journeymen employment to determine the apprentice ratio on any one job or in the shop. Apprentices shall be rotated on all work as outlined in the current apprenticeship standards and the Employer shall be responsible for said rotation.

Registration and evaluation of apprentice applicants and placement of qualified apprentice applicants shall be as directed by the Local Joint Apprenticeship Training Committee

SECTION 4.  Joint Apprenticeship and Training Sub-Committees shall be established so as to have three (3) operative sub-committees to be identified as follows:

CENTRAL--Covering all SMART Local #91 areas and governing all sub-committees with the related training school in Rock Island, Illinois.

NORTHERN--Covering the Dubuque area.

SOUTHERN--Covering Ottumwa, Burlington, Quincy, Ft. Madison and Keokuk areas.

SERVICE TECHNICIAN--Covering the local union area with the related training school in Rock Island, Illinois.

Both parties agree to institute a committee comprised of equal representation to develop a program of certification for welders. This committee's recommendations will become a part of the programs that the J.A.T.C. is responsible for implementing.

SECTION 5.  A graduated wage scale for SHEET METAL APPRENTICES and SERVICE TECHNICIANS shall be established and maintained on the following percentage

**basis of the established wage rate of journeyman sheet metal workers:**

| | | | |
|---|---|---|---|
| **First Year** | **-** | **First Half** | **--47%** |
| **First Year** | **-** | **Second Half** | **--53%** |
| **Second Year** | **-** | **First Half** | **--58%** |
| **Second Year** | **-** | **Second Half** | **--64%** |
| **Third Year** | **-** | **First Half** | **--69%** |
| **Third Year** | **-** | **Second Half** | **--73%** |
| **Fourth Year** | **-** | **First Half** | **--75%** |
| **Fourth Year** | **-** | **Second Half** | **--82%** |
| **Fifth Year** | **-** | **First Half** | **--85%** |
| **Fifth Year** | **-** | **Second Half** | **--90%** |

**SECTION 6.  The Central Illowa Sheet Metal Workers Local Union No. 91 Joint Apprenticeship and Training Committee shall have responsibility for and control over all apprenticeship and journeyman training, with one exception.  The committee may, if they choose, delegate some or all of this responsibility and/or control to one or any of the various sub-committees.**

**ARTICLE XII**
**CONTRACT EXPIRATION NOTICE**

**SECTION 1.  This Agreement and Addenda Numbers 1 through 33 attached hereto shall become effective on the 1st day of June 2021 and remain in full force and effect until the 31st day of May 2022 and shall continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date.  In the event such notice of reopening is served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party, provided, however, that the contract expiration date contained in this section shall not be effective in the event proceedings under Article X, Section 8 are not completed prior to that date.  In that event, this Agreement shall continue in full force and effect until modified by order of the National Joint Adjustment Board or until the procedures under Article X, Section 8 have been otherwise completed.**

**SECTION 2.  If, pursuant to federal or state law, any provision of this Agreement shall be found by a court of competent jurisdiction to be void or unenforceable, all of the other provisions of this Agreement shall remain in full force and effect.**

**SECTION 3.  Notwithstanding any other provision of this Article, or any other Article of this Agreement, whenever an amendment to the Standard Form of Union Agreement shall be adopted by the National Joint Labor Relations Adjustment Committee, any party to this Agreement, upon the service of notice to all other parties hereto, shall have this Agreement reopened thirty (30) days thereafter, for the sole and only purpose of attempting to negotiate such amendment or amendments into this Agreement for the duration of the term hereof.**

21

There shall be no strike or lockout over this issue.

## ADDENDA

It is understood and agreed that wherever the standard form of Union Agreement differs from this Addenda that the provisions of this Addenda shall control.

It is further understood and agreed that this Agreement shall cover all work performed within the jurisdiction of Local Union No. 91 in the state of Illinois and Iowa, as defined on page one of this Agreement.

## EMPLOYEES HIRED DIRECT TO JOB SITE

No. 1 Employees hired at the job site and not sent from the Employers shop shall receive travel expenses from the nearest city limits where the union has a signed agreement with an employer, less the fifty (50) miles free zone.  If within said free zone, no travel expenses will be paid.

## FOREMAN RATIO -- FIELD

No. 2 When four or more Employees (journeyman, apprentices and tradesman  are employed on a job which is out of the shop, and the job is of eight (8) hours or longer duration the following working schedule for working foremen shall apply:

Four (4) through eight (8) - one (1) working foreman.

Nine (9) through nineteen (19) - one (1) working foreman and one (1) working general foreman.

Each ten (10) additional employees - one (1) additional working foreman.

## FOREMAN RATIO - SHOP

No. 3 When Four (4) or more Union Employees (journeyman, apprentices and tradesman) are employed in a shop by an Employer the following working schedule for foremen shall apply:

Zero (0) through three (3) sheet metal workers - no working foreman

Four (4) through fifteen (15) - one (1) working foreman.

 Sixteen (16) through twenty-five (25) - one (1) working foreman and one (1) working general foreman

Twenty-six (26) and over - one (1) additional working general foreman.

## FOREMAN PAY

No. 4 All working foremen shall receive four (4%) percent times the total wage package per hour, per wage increase, over the established journeyperson scale. Working General Foremen shall receive eight (8%) percent times the total wage package per hour, per wage increase, over the established journeyman scale. All working foremen and working general foremen shall be journeyman sheet metal workers.

## HIGH PAY

No. 5 When working with another trade on a composite crew basis, on the same project, the sheet metal workers will receive the same high pay, if any, the other craft receives. High pay is in reference to the premium pay for working at an elevated height.

## VACATION

No. 6 All Union Employees may, at their own discretion, take up to three (3) weeks vacation, either consecutively or separately. However, if the employee chooses to take more than three (3) consecutive weeks of vacation, this must be by mutual agreement with his or her Employer. No more than ten percent (10%) of the Employees of any one (1) shop shall leave for vacation at any one time unless it is mutually agreed by the Employer and the Employees.

## COMPETITIVE CONTRACTING

No. 7 Employees shall not engage in any type of sheet metal repairs or installations, on new or old residential and/or industrial/commercial work, or act in the capacity of an Employer, or on a piece or lump sum basis on such work or compete with an Employer who is a party to this agreement. Where donated sheet metal work is performed for charitable and municipal or public groups, city or state, all work shall be cleared through the Business Manager of the Union and the Chapter Manager of the Association.

## USE OF COMPANY VEHICLE FOR THE EMPLOYER'S CONVENIENCE

No. 8 Any time the employee is requested or instructed to use the Employer's vehicle for the convenience of the employer or any reason other than the employee's personal transportation, he/she shall be paid for all such time on the basis of one-and-one-half (1 ½) times two-thirds the applicable wage scale established in this Agreement.

## SAFETY CLAUSE

No. 9 Every Employer shall adopt and use practices, means, methods, operations and processes, which are reasonably adequate to render such employment and place of

employment safe. Employers shall do everything reasonably necessary to protect life, health and safety. All Employers shall:

(1) Occupy or maintain a place of employment that is safe.

(2) Do everything reasonably necessary to protect the life, health and safety of the employees.

(3) Nothing in this clause shall be construed to mean that the Union and/or the individual Employee has any liability regarding safety practices, means, methods, operations, etc. It is understood that Employees shall follow all applicable safety practices of the Employer and Industry.

The Union shall:

All Union personnel will have and maintain a current first aid card, including CPR, as provided by the Sheet Metal International Training Institute and maintain a ten (10) hour OSHA card that is current within the past three (3) years or shorter if required by customer. The Union will also schedule annually any established ITI courses on Health and Safety to the membership. At the Employers request the Union will provide classes for CPR, First Aid, and OSHA at the Union Hall or Employers shop.

## DRUG POLICY

No. 10 A Drug/Alcohol policy dated June 1, 2017 is incorporated into this agreement. All tests and evaluations will be the responsibility of the Employer. (Drug Policy held under separate cover.)

## NEW EMPLOYER QUALIFICATIONS

No. 11 New Employers having a contract with the Union shall meet the following standards:

(a) An established place of business with a shop equipped with the necessary tools and machinery to perform sheet metal work and located in an area zoned for the operation of a business.

(b) Proof of financial responsibility sufficient to cover payroll and fringe benefits and posting of a surety or cash bond of ten thousand ($10,000.00) dollars. Proof of this bond shall be presented to the Trustees of the local union and held until thirty-six (36) consecutive months of payroll and fringe benefits have been paid by the due date. (due date definition in accordance with Art. VIII Sec. 3)

(c) The steady employment of at least one (1) journeyman year-round.

24

(d) If a partnership exists, the company or business shall notify the Local Union and Contractors' Association, which one of the Employers shall work in the shop at the trade and then in the shop only.

(e) Notification to the Illowa Sheet Metal Contractors' Association shall be made upon application by person or persons requesting a contract with Local Union 91.

(f) Have a permanent business telephone.

(g) Occupy a building having a minimum of twelve hundred (1,200) square feet.

## TOOLS - FURNISHING OF

No. 12 All journeyman and apprentice sheet metal workers shall have a full kit of personal hand tools as follows:

**REQUIRED TOOLS:**

1. Toolbox of capable size to hold the following tools:
2. Tinners hammer.
3. Square nosed pliers.
4. Twenty-five (25') foot pull tape.
5. Left- and right-hand aviation snips.  (One of each) in usable condition.
6. Bull snips or straight snips.
7. Hand punch - complete - (Example: Whitney.)
8. Tri-square 12"
9. 9" Torpedo Level
10. Dividers.
11. Vise Grips - minimum two 8".
12. Adjustable wrench.
13. Cold chisel.
14. Center punch.
15. Plumb bob.
16. Chalk Line.
17. Complete Allen wrench set.
18. Assortment of scratch awls.
19. Drift pin.
20. Screw drivers - large and small.
21. Phillips screwdriver.
22. Dolly bar.
23. Keyhole saw handle.
24. Trammel points.
25. Pop Riveter of a standard make of the union's choice.
26. Welding Hood

**Employer to furnish all expendable parts.**

## OPTIONAL TOOLS:

1. Fifty-foot steel tape.
2. Level 24" long.
3. 6-foot stick rule
4. Heavy hammer.
5. Crowbar.
6. Wood chisels.
7. Framing square.
8. Lufkin or Pexto circumference rule.
9. 3/8 ratchet set

**All Service Technicians shall have a kit of personal hand tools as follows:**

1. Flashlight, two cell.
2. Wrench, Refrigeration
3. Hammer, tinners, 16 oz.
4. Hacksaw Frame, adjustable.
5. Wrench, Allen Set.
6. Flaring Tools.
7. Wrench Adjustable.
8. Channel Locks.
9. Pliers.
10. Side Cutters.
11. Pliers, Needle nose.
12. Vise Grips.
13. Nut Driver Set.
14. Screw Drivers, Phillips, (4) assorted sizes (one to be a stubby).
15. Screw Drivers, Standard (4) assorted sizes (one to be a stubby).
16. Socket Set 3/8" drive.
17. Tape, measuring.
18. Knife, utility.
19. Level (torpedo type)
20. Awl, scratch.
21. Chalk Line.
22. Snips, Aviation (1) right hand, (1) left hand.
23. Pop Riveter.
24. Dividers (Compass) small
25. Wrenches, Combination, Set - box and end.
26. Toolbox, suitable to contain the above tools.

26

## PROTECTIVE APPAREL

**No. 13 The Employer agrees to furnish leather welding gloves, welding sleeves and all the glass, liners and/or headbands for the Employees welding hood.  In addition, the Employer agrees to replace the Employees welding capes or jackets as they wear out.  Old items must be turned in for replacement.  In addition, the Employer will pay $200 towards replacement lenses for the employees' prescription safety glasses during a 24-month period.  The condition necessitating the replacement, as set forth in the above, must be mutually agreed to between the employer and employee.**

**It is agreed that as the conditions of the job dictate, the Employee will be suitably and cleanly attired, i.e. service man in a professional manner, men subject to the weather with warm clothes available, etc.**

## POSTING OF NOTICES

**No. 14 The Employer shall provide reasonable space for the posting of notices of the Employer addressed to the Employees and for official notices of the Union addressed to its members, and only such notices as are posted by responsible officials of the Employer or of the Union shall be placed therein.  Any adverse notice posted or presented to the Employer, which is not considered in the realm of employment relations, will not be allowed for posting under this provision.**

## UNION STEWARD

**No. 15 The Employer recognizes the right of the Union to have a Steward at any shop or any job site where sheet metal workers are employed under the terms of this contract.  The steward shall be the last non-supervisory Employee on the job unless the Union and Employer agree otherwise.**

## RIGHT OF ENTRY

**No. 16 Employers shall not object to Union Sheet Metal Business Manager and/or Business Representative(s) from having immediate access to the shop or job site, pursuant to proper identification by said Manager or Representative(s). When the Union Business Manager and/or Business Representative(s) are visiting the shop or job site they shall sign in at the shop office or job site office.  When Business Manager and/or Business Representative(s) are visiting the shop or job site outside normal business working hours the Employer shall establish a sign in procedure.**

### HANDLING OF MATERIAL

No. 17 The word "handling", as specified in Article I of this Standard Form of Union Agreement, shall be construed to mean only the movements of materials and/or equipment, during the process of fabrication and/or erection.

### EMPLOYEES AND CONTRACTOR RESPONSIBILITY CLAUSE

No.18   SMART Local 91 is firmly committed to the betterment of the Industry and pledges to give a full day's work for a full day's pay with a high level of quality and along with this is a strong commitment to making his industry a safe place for he and his fellow workers. The parties hereto, realizing that the public interest must be protected from incompetent mechanics and unscrupulous contractors, do hereby agree that any Employer, doing business under the terms of this agreement, who makes faulty sheet metal installations or misrepresents their services to the customer or allows non-craftsman-like installations to be installed shall be required to appear before the Local Joint Adjustment Board and explain same.  In like manner, any sheet metal mechanic covered by this working Agreement who installs materials or equipment in a hazardous or un-craftsman-like manner, or which is not in accord with the applicable plans, specifications or local codes shall also be required to appear before the Local Joint Adjustment Board and explain same.  In the event the Local Joint Adjustment Board determines an individual contractor or mechanic to be at fault, the contractors' organization and the Local Union shall assume the responsibility for disciplining their respective members. All improper work, for which Employees are responsible, as skilled craftsmen, and which was not installed in error by order of the Employer, will be corrected by the Employee on their own time during regular working hours.  The Local Joint Adjustment Board shall be advised in all cases of what disciplinary steps have been taken.

### JOINT MEETINGS

No. 19  L.J.A.B.  In order for both the Contractors and the Union to understand and help solve all mutual problems and to combat difficulties from outside sources, it is hereby mutually agreed that meetings be held as necessary.

### ON CALL PAY FOR HVAC SERVICE EMPLOYEE

No. 20 On-call pay of ten ($10) dollars for each day that a HVAC service Employee is on call for after-hour service.

### INDUSTRY RESPONSIBILITY

No. 21 The Employer may report to the Union all jobs offered for bid or his acceptance by negotiation or otherwise in which any of the work or equipment covered by this Agreement is not included, to his knowledge and he shall specify what is omitted. The Union agrees to

exert every reasonable effort to secure such work for its membership.

## MUTUAL REOPENING OF CONTRACT

No. 22 The only means of reopening the contract during its tenure shall be as follows:

1.    In the event the International Association of Sheet Metal, Air, Rail and Transportation Workers and the Sheet metal and Air Conditioning National Contractors Association enter into any agreement on the national level that this Contract shall be considered automatically open to discuss this item only. If parties cannot agree on a change, the contract will nevertheless continue in accordance with its terms.

2.    Whenever there is a mutual agreement on the part of the Employers and the Union, the Contract shall be considered open for discussion on a specific item or items only. If parties cannot agree on a change, the contract will nevertheless continue in accordance with its terms.

## EMPLOYER RESPONSIBILITY - FEDERAL AND STATE LAWS

No. 23  It is understood and agreed that all contractors employing journeyperson and apprentices covered by this agreement shall comply with Federal and State Laws governing Workmen's Compensation, Social Security, Unemployment Compensation, etc., and it is further agreed that in order to insure all Employees covered in this Agreement against hazard of unemployment resulting through no fault of their own, Employers who are not automatically within the provisions of contributions thereunder, hereby agree to make voluntary applications to the proper State Authorities as to come within the statutory provisions of the Illinois and Iowa Unemployment Acts relating to the Employers who are not under said acts, and the regulations promulgated thereunder regardless of the number of Employees. It is also required that each Employer shall forward to the Union and the Illowa Sheet Metal Contractors Association, Inc. an insurance certificate covering Workmen's Compensation, said certificate to contain a clause stating that ten (10) days notice will be given to the holder of the certificate prior to cancellation. It is also agreed that each Employer will file with the Union and the Contractors' Association, a letter containing his account number for Unemployment Compensation.

## MOST FAVORED NATIONS CLAUSE

No. 24 In the event the Union enters into an agreement that contains more favorable terms or conditions the Association will have the right to adopt said agreement immediately. The Union shall provide notice to the Illowa Contractors Association of any term that is different from this agreement within two (2) business days of the new term

becoming effective.

## PROTECTION OF WORK

**No. 25 The Union and Employer agree that special steps are necessary in order to protect, preserve, and expand the traditional work of the Union in the Local 91 jurisdiction.**

**The Union and Employer agree that the Union has the right to determine those areas or projects where specialty agreements are necessary or desirable for the above purpose.  The Union and Employer agree that the Union shall have the right to negotiate such agreements in the area where work is to be performed, even though such agreements may contain certain terms and conditions, which differ from the Master Agreement between the Employer and Union.**

**In the event that the Union does negotiate such specialty agreements or differing conditions for certain geographical areas or projects, the Union and Employer agree that such agreements will have no effect on the Master Agreement and will not be subject to incorporation in the Master Agreement under the terms of the most-favored-nation clause.**

## NON-DISCRIMINATION CLAUSE

**No. 26 The Employer and the Union agree that selection and referral of the job applicants shall be made without regard to race, creed, color, age, sex, or national origin.**

## OWNER-MEMBER PARTICIPATION CLAUSE

**No. 27 Bargaining unit employees hereunder shall include owner/members, i.e., Employees of incorporated Employers who: (a) are officers, directors, or majority stockholders of an incorporated Employer; (b) perform work covered by the terms of this Agreement; and (c) are listed on the Registration Statement filed with the Sheet Metal Workers National Pension Fund.  Contributions on behalf of Owner/Members shall be made to the National Pension Fund for all hours for which the Owner/Member is paid or entitled to payment.**

## CONTRACT AUTOMATIC AMENDMENT

**No. 28 It is further agreed that should compliance with any State or Federal Law or any amendment thereof, of any order or regulation issued thereunder, prohibit the carrying out of any of the provisions of this Agreement, then to the extent of such deviation or prohibition, this Agreement shall be deemed to have been automatically amended, effective on the effective date of such law, amendment, order or regulation, and in compliance therewith.**

## PREROGATIVE CLAUSE

No. 29 Any of the rights, powers, or authority the Employer had prior to the signing of this Agreement are retained by the Employer, except those specifically abridged, delegated or modified by this agreement.

Nothing in this Agreement shall be construed to mean that the Employer and/or the Union are bound by any decisions rendered by the Impartial Jurisdiction Disputes Board of the construction industry or any successor(s)

## SEASONAL WORKING HOURS

No. 30 If, during the duration of this contract, the Employer wishes to utilize seasonal working hours for employment in the shops, the Union agrees to give this option with the understanding that the following provisions will be adhered to:

1.  The seasonal hours do not affect the "Shift Pay" provision in any way.
2.  The time frame falls between the start and end of Daylight-Saving Time also that year being utilized.
3.  That the Employer notifies the Union hall, in writing, for starting and ending times, also starting and ending dates.

## PERSONAL CELL PHONES/DEVICES

No. 31 All Union Employees shall not supply or use a personal cell phone or personal electronic device for business or personal use during working hours.

## "ALTERNATIVE SCHEDULE" to the NATIONAL PENSION FUND (NPF)

No. 32 The Employer and the Union recognize that, during the term of this Agreement, the Sheet Metal Workers' National Pension Fund (NPF) will notify the parties of the Funds' status under the Pension Protection Act of 2006. It is anticipated that the Fund will be in critical status. Consequently, the Employer and the Union further recognize that a surcharge may be imposed upon contributions to the Fund, and that the Fund may adopt a rehabilitation plan, incorporating alternative schedules of benefits and contributions, during the term of this Agreement.

The parties agree that a schedule described above will be deemed to be adopted automatically if, in accordance with this agreement, the Union allocates or reallocates a portion of the wage and fringe-benefit package, or where the agreement provides for an automatic allocation or reallocation of the wage and fringe-benefit package, that is

sufficient to cover fully any increases in contribution rates to the NPF under that schedule.

It is undesirable to pay a surcharge upon pension contributions, with no resulting improvement in pension benefits. Accordingly, in the absence of a reallocation as provided above, at such time as the Trustees of the Fund furnish the Employer and the Union with alternative schedules as provided above, either party may re-open this Agreement upon thirty days written notice to the other, for the purpose of reaching agreement upon the adoption of one of those schedules. During the negotiations, the parties shall give due recognition to the desirability of maintaining pension benefits in light of economic conditions in the local area.

The parties agree further that the schedule described above will become part of this agreement, and will be incorporated by reference herein, on the date the schedule is adopted or is deemed to have been adopted automatically in accordance with the terms above until such time it is deemed unnecessary. The parties will not take any action or actions inconsistent with the NPF's Rehabilitation Plan or Funding Improvement Plan of which the schedule is a part, as modified or amended from time-to-time.

## CODE OF EXCELLENCE

No. 33 SMART Local #91 and Employers shall recognize and adhere to the Sheet Metal Workers Code of Excellence (under separate cover) in effort to raise professionalism and marketability of union craftsmanship.  This policy was adopted by the membership of Local #91 on January 31, 2012.

## DURATION OF AGREEMENT

This contract is for the period of 1 June 2021 thru 31 May 2024 and is, except as hereby amended and therefore amended in all respects, ratified and confirmed.  The parties hereto agree that this Contract, as hereto amended and as amended by agreement, is intended to cover all matters of wages, hours and other conditions of employment, including insurance benefits, welfare funds, pension, vacation and J.A.T.C. Funds or benefit plans of similar or related subjects and that during the balance of the term of this Agreement the Employer will not be required to negotiate on any further matters affecting these or any other subjects not specifically set forth in this Agreement.

_____          _____
Paul Elgatian, Illowa Contractors Assn          Eric Meirhaeghe, SMART Local 91
                                                Business Manager

# Signature Page

_____
Employer or Legal Name of Entity

_____
Mailing Address

_____
City, State, Zip

I/We agree to be bound by the terms and conditions of the Collective Bargaining Agreement, and affirmative representation that the correct legal entity is as represented on the document.  I/We further agree to notify the Union in the event of any change in the nature and/or identity of the Employer.  I/We further represent and warrant that all Wage and Benefit reports, as required to be filed under this Agreement, will be true and correct as filed, under penalty of perjury.  I/We stipulate and agree that venue for enforcement shall be Rock Island County, IL.

In the case of a corporation, limited liability company or partnership, the undersigned represents and warrants that he/she is duly authorized and empowered to execute this Agreement on behalf of the entity.

In Witness Whereof, the parties hereto affix their signatures and seal this _____ day of _____.

Employer                                    SMART Local Union #91


_____        _____
Authorized Signature                            Eric Meirhaeghe
                                                Business Manager

_____
Print name and Position

_____
Employer EIN#

Processed by: QUAD CITY BANK AND TRUST COMPANY

4:25-cv-04100-SLD-RLH   # 1   Filed: 05/16/25   Page 42 of 42

**SHEET METAL WORKERS LOCAL 91**

Date Processed: 07/30/2021
Date Printed: 07/30/2021

**Image Report**

page: 2

Batch 57037 Seq 2

Amount $0.00 Image 1 of 1

## Signature Page

Integrated Environments Testing & Balancing L.L.C.
Employer or Legal Name of Entity

11715 Ridgewood Rd.
Mailing Address

Milan, IL 61264
City, State, Zip

I/We agree to be bound by the terms and conditions of the Collective Bargaining Agreement, and affirmative representation that the correct legal entity is as represented on the document. I/We further agree to notify the Union in the event of any change in the nature and/or identity of the Employer. I/We further represent and warrant that all Wage and Benefit reports, as required to be filed under this Agreement, will be true and correct as filed, under penalty of perjury. I/We stipulate and agree that venue for enforcement shall be Rock Island County, IL.

In the case of a corporation, limited liability company or partnership, the undersigned represents and warrants that he/she is duly authorized and empowered to execute this Agreement on behalf of the entity.

In Witness Whereof, the parties hereto affix their signatures and seal this 26th day of July, 2021.

Employer                                    SMART Local Union #91

Authorized Signature                        Eric Meirhaeghe
                                            Business Manager

Trever R. Fisher- Owner
Print name and Position

84-4223127
Employer EIN#

33

Exhibit B